# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 30 2019, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

R. Lee Money
Greenwood, Indiana

ATTORNEY FOR APPELLEES

Andrew J. Noone
Noone Law, LLC
Beech Grove, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| The Guardianship of J.H., D.H., and R.H. | July 30, 2019 |
| W.B. and S.B., | Court of Appeals Case No. 19A-GU-406 |
| *Appellants-Respondents/Counter-Petitioners,* | Appeal from the Marion Superior Court |
| v. | The Honorable Kelly M. Scanlan, Judge Pro Tempore |
| J.A. and H.A., | Trial Court Cause Nos. 49D08-1803-GU-11272 49D08-1804-GU-13111 49D08-1804-GU-13113 |
| *Appellees-Petitioners/Counter-Respondents* | |

**Baker, Judge.**

[1] W.B. and S.B. (collectively, Paternal Grandparents) appeal the trial court's order awarding guardianship of J.H., D.H., and R.H. (collectively, the Children) to J.A. and H.A. (collectively, Maternal Grandparents). Paternal Grandparents argue that the trial court's order violated the constitutional rights of the Children's father (Father). Finding no violation, we affirm.

## Facts

[2] J.H. is thirteen years old; D.H. is ten years old; and R.H. is eight years old. For approximately the first three years of J.H.'s life, the family lived with Maternal Grandparents. Then, they lived with Paternal Grandparents for about six years. At some point, the parents separated, and in May 2016, they divorced. Mother was given sole legal and physical custody of the Children and Father, who struggles with substance abuse issues, was given supervised parenting time. For the three years leading up to March 1, 2018, Mother and the Children lived with Maternal Grandparents. On March 1, 2018, Mother died.

[3] On March 21, 2018, Maternal Grandparents filed a petition for guardianship of the Children. Paternal Grandparents filed a counter-petition for guardianship on March 23, 2018. Father is homeless, struggling with substance abuse issues, and has a pending criminal charge; he concedes that he is unable to care for the Children. While he has no safety concerns about the Children in the care of Maternal Grandparents, Father wants Paternal Grandparents to be appointed as their guardians.

[4]     The trial court held an evidentiary hearing on the guardianship petitions on December 20, 2018. On January 23, 2019, the trial court granted the Maternal Grandparents' petition and denied the Paternal Grandparents' petition. In pertinent part, it found as follows:

> . . . The Court had the opportunity to observe the witnesses' demeanors and judge their credibility. . . .
>
> ***
>
> 3.     Both Maternal Grandparents and Paternal Grandparents have stable, long-term marriages and loving relationships with the Children.
>
> ***
>
> 9.     D.H. has asthma. Both Paternal Grandmother and Paternal Grandfather smoke cigarettes in the home and in the car when the Children are present. The Court finds this behavior, which Paternal Grandparents have not taken steps to change, quite concerning.
>
> ***
>
> 16.     . . . Maternal Grandparents are more attuned to and proactive regarding the Children's educational needs than are Paternal Grandparents.
>
> 17.     Maternal Grandparents provide structure and stability for the Children in their home.

18.    The Children love vacationing with Paternal Grandparents.

***

20.    The [guardian ad litem] . . . recommended that Maternal Grandparents be appointed guardians, as in the best interests of the Children, who have dealt with a significant amount of upheaval in their short lives.

21.    Factors supporting the GAL's recommendation include that the Children have transitioned seamlessly to their newly built home and that the Children appear to be thriving and are doing well in school.

***

25.    Paternal Grandparents have played a significant role in the Children's lives and have continued to have meaningful contact with them.

***

29.    Pursuant to Indiana Code § 29-3-5-5(b), the Court, acting in the best interests of a minor, may pass over a person having priority and appoint a person having a lower priority of consideration for appointment as guardian.

30.    This Court has given due regard to Father's wishes and to the best interests of the Children, pursuant to Indiana Code § 29-3-5-4.

31.    The key consideration for this Court when appointing a
       guardian over a minor is the best interest of the minor.

32.    It is in the best interest of the Children to remain in
       Maternal Grandparents' home, in their current school, and
       to benefit from the structure and stability provided by the
       Maternal Grandparents, while maintaining frequent
       contact with Paternal Grandparents.

Appealed Order p. 1-3 (internal citation omitted).  The trial court ordered both

sets of grandparents to work together to arrange regular visits between the

Children and Paternal Grandparents and ordered that Father's parenting time

would continue to be supervised, either at an agency or by Paternal

Grandparents.  Paternal Grandparents now appeal.

# Discussion and Decision

[5]    The sole argument raised by Paternal Grandparents on appeal is that, by

overriding Father's wishes, the trial court violated his constitutional rights as a

parent.[1]

[6]    Initially, we note that "[c]onstitutional rights are personal to an

individual . . . ."  *Richardson v. Richardson*, 34 N.E.3d 696, 702 n.3 (Ind. Ct.

App. 2015).  As such, an alleged violation of a third party's constitutional rights

---

[1] Paternal Grandparents also argue that there is insufficient evidence supporting the trial court's purported conclusion that Maternal Grandparents were the Children's de facto custodians.  But the trial court reached the opposite conclusion, finding that the Maternal Grandparents were *not* the de facto custodians.  Appealed Order p. 3.

may not be claimed by someone else. *Kirkland v. State*, 232 N.E.2d 365, 366, 249 Ind. 305, 308 (Ind. 1968). Here, therefore, Paternal Grandparents do not have standing to raise this claim on Father's behalf.

[7] That said, we will briefly address their argument. In essence, Paternal Grandparents insist that, without exception, trial courts must defer to the wishes of biological parents regarding who will be their children's guardians.

[8] It is certainly true that parents "have a fundamental constitutional right to direct their children's upbringing without undue governmental interference, and that a child's best interests *do not necessarily* override that parental right." *In re Visitation of M.L.B.*, 983 N.E.2d 583, 586 (Ind. 2013) (emphasis added). When our Supreme Court declared that a child's best interests "do not necessarily" override this right of their parents, it necessarily implied that sometimes, the parents' rights will, indeed, be overridden. In other words, this parental right is not unlimited—nor should it be. Were it unlimited, the trial court would be obliged to bend to a parent who wanted his children to be placed under the care of a stranger, or a drug dealer, or a person with untreated mental health issues.

[9] Thankfully, in this case, we have none of those extremes. Instead, we have two sets of loving grandparents who genuinely care for the Children and want them to have a safe and stable home; they simply disagree on which home that should be. The trial court relied on the testimony of the guardian ad litem that, given the significant upheaval the Children have had in their short lives, the most important thing for them right now is stability, which means continuing to

live with Maternal Grandparents, as they have for several years, and remaining at the same schools. It also means, of course, that the Children will continue to spend regular and substantial time with Paternal Grandparents, who will play vital roles in the Children's lives as they process the death of their Mother and struggles of their Father.

[10] The trial court explicitly took Father's wishes into consideration.[2] It merely found that, in this case, the best interests of the Children override his right to direct their upbringing. Given this record, as well as the trial court's right to weigh evidence and assess witness credibility, we find that the trial court's order was not erroneous.

[11] The judgment of the trial court is affirmed.

Kirsch, J., and Crone, J., concur.

---

[2] While Paternal Grandparents argue that *Troxel v. Granville*, 530 U.S. 57, 67 (2000), requires us to reach a different result, we note that the statute at issue in that case contained no requirement that the trial court even consider the parent's wishes. Here, the trial court was required to, and did, take Father's wishes into consideration. Ind. Code § 29-3-5-4(2)(A).